UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
DEC 0 8 2010
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

DANIEL GRACIA,            Case No. 6:10-bk-01663-ABB
                                            Chapter 7
     Debtor.
_____/

KATZMAN GARFINKEL, P.A.,

     Plaintiff,                          Adv. Pro. No. 6:10-ap-00130-ABB

vs.

DANIEL GRACIA,

     Defendant.
_____/

## MEMORANDUM OPNION

This matter came before the Court on the Complaint to Determine the Dischargeability of a Particular Debt (Doc. No. 1) filed by the law firm Plaintiff Katzman Garfinkel P.A. against the *pro se* Defendant/Debtor Daniel Gracia ("Debtor") seeking to have a debt of $46,793.77 deemed nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A). The final evidentiary hearing was held on September 21, 2010 at which a representative of Plaintiff, the Debtor, and the parties' respective counsel appeared.

Judgment is due to be entered in favor of Debtor and against Plaintiff for the reasons set forth herein. The Court makes the following Findings of Facts and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

### *Insurance Claims*

Debtor owned and operated various companies which primarily acquired and managed residential real estate in the Orlando area. Debtor retained Plaintiff, f/k/a Garfinkel Trial Group, to represent him and his company Greater Limits, Inc. in a dispute with the property insurance company regarding hurricane damage suffered by eight properties in 2004 with claims totaling approximately $700,000.00.

Plaintiff mismanaged the insurance claims and there was confusion surrounding the outcomes of the claims. Plaintiff eventually settled the claim relating to the real property located at 117 Amelia Street, Orlando, Florida. The claim was settled for $46,793.77 and Debtor executed a closing statement prepared by Plaintiff on or about February 4, 2008 setting forth Debtor was entitled to settlement proceeds of $46,793.77. Plaintiff issued check number 4584 on March 24, 2008 in the amount of $46,793.77 to Debtor individually (Doc. No. 3, Ex. D). Debtor endorsed the check and deposited it into a checking account for one of his businesses.

Plaintiff erroneously issued a second check to Debtor for $46,793.77 on or about April 1, 2008 thereby paying the Amelia Street settlement twice. The overpayment of $46,793.77 was the result of Plaintiff's failure to follow its accounting protocol and log check number 4584 into its accounting system.

The second check was delivered to Debtor by mail and was deposited into the business account for his company Advanced Executive Group ("AEG") on or about April 4, 2008 (Doc. No. 3, Ex. A). Debtor does not recall receiving the second check. Debtor had several employees working for him at the time and he did not review all checks

received. Either Debtor or an employee deposited the second check into AEG's bank account. Debtor had waited several years for the insurance claims to be resolved and quickly used the funds from both checks issued by Plaintiff to repair hurricane damage.

Debtor did not know the second check was an overpayment when it was received or deposited. It was not unusual for Debtor to receive sizable checks because he was actively managing and selling properties; significant amounts of money were regularly flowing in and out of his businesses. He was engaged in several insurance disputes and routinely received payments on insurance claims.

Plaintiff did not discover the overpayment error until it conducted a disbursement reconciliation in late May 2008—almost two months after the second check was issued to Debtor. An employee of Plaintiff telephoned Debtor and alerted him to the overpayment. Plaintiff mailed a letter to Debtor dated May 23, 2008 notifying him of the overpayment and demanding he repay the funds by March 30, 2008 (Doc. No. 3, Ex. B).

Debtor acknowledged to Plaintiff the second check was an overpayment and that he desired to repay the funds, but he had already spent the funds and did not have the financial means to immediately repay $46,793.77. Debtor sent an email on May 28, 2008 to John Mallah, Plaintiff's managing partner, acknowledging he owed the overpayment to Plaintiff, but needed an extension of time in order to obtain a loan to repay the funds (Pl's Ex. 4). Debtor authorized Plaintiff to retain any funds that he may be entitled to in other insurance matters being handled by Plaintiff and set-off such amounts against the overpayment indebtedness (Id.).

### *State Court Litigation*

Plaintiff instituted a civil suit against Debtor individually in the Florida State Court captioned *Katzman Garfinkel, P.A. v. Daniel Gracia*, Case No. 08-CA-13632-O) seeking recovery of the overpayment. Plaintiff, during the litigation, prepared and presented to Debtor a Verified Joint Petition for Entry of Consent Judgment ("Joint Petition") pursuant to which Debtor: (i) stipulated the amount of $46,793.77, plus interest at the rate of 11% per annum from April 4, 2008, was due and owing to Plaintiff; and (ii) agreed to the entry of a Consent Judgment for such amount (Ex. 1). Three representatives of Plaintiff, including John Mallah, met with Debtor at Debtor's office and Debtor executed the Joint Petition on June 4, 2008.

The Florida State Court entered a Consent Judgment on June 18, 2008 approving the Joint Petition and setting forth:

> Respondent, Daniel Gracia will pay Petitioner, Katzman Garfinkel, P.A., the sum of $46,793.77, plus interest accruing at the statutory rate of 11% per annum from April 4, 2008. Let execution issue forthwith.

(Doc. No. 1, Ex. A). Neither the Joint Petition nor the Consent Judgment contain any findings of misconduct or fraud by Debtor. Neither document sets forth repayment terms for the stipulated debt.

Debtor was not represented by counsel in connection with the Joint Petition and Consent Judgment. He agreed to execute the Joint Petition because Plaintiff was still representing him on pending insurance claims. He believed Plaintiff would reduce insurance claim payouts to him if he did not execute the Joint Petition. Plaintiff, approximately one week after the Consent Judgment was entered, terminated its representation of Debtor and his companies (Doc. No. 3, Ex. C).

Debtor's attempts to borrow money from various sources to fulfill the Consent Judgment obligation were unsuccessful. Debtor paid Plaintiff $1,000.00 after entry of the Consent Judgment, but was unable to pay the balance of the debt.

### *Adversary Proceeding*

Debtor filed a Chapter 7 bankruptcy case on February 4, 2010 and listed the indebtedness of $46,793.77 owed to Plaintiff in Schedule F. Plaintiff instituted this adversary proceeding against Debtor asserting the indebtedness is nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.

Plaintiff alleges Debtor's receipt and retention of the overpayment were fraudulent acts. The Complaint is not well pled and fails to address the fundamental elements of a Section 523(a)(2)(A) cause of action. Plaintiff presented no closing statements or negotiated checks as evidence. Its documentary evidence consists of the Debtor's deposition transcript, the May 28, 2008 email, and an affidavit of a non-witness.

The cornerstone issue of this adversary proceeding is the Debtor's intent— whether he acted with fraudulent intent when he negotiated Plaintiff's second check or in retaining the overpayment. Debtor did not act with fraudulent intent at any time.

Debtor did not cause Plaintiff to issue the second check for $46,793.77. The check was issued due to Plaintiff's internal accounting errors. Plaintiff failed to discover its error for two months. Debtor first learned of the overpayment in late May 2008 when Plaintiff telephoned him. Debtor did not know an overpayment had been made to him prior to that telephone call. Debtor did not know the second check was an overpayment when the check was deposited into AEG's account or when the funds were spent shortly thereafter.

Debtor, after receiving Plaintiff's call, reviewed his financial records and verified Plaintiff had issued him two payments of $46,793.77 for the Amelia Street property claim. Debtor, from the time he learned of the overpayment, always intended to repay the overpayment to Plaintiff and communicated such intent to Plaintiff, verbally and in writing. At no time did Debtor challenge the overpayment or refuse to repay it.

Plaintiff imposed unrealistic repayment demands upon Debtor. Debtor could not immediately repay the overpayment because he had spent the funds shortly after the check was deposited and did not have any monies on hand. He requested an extension of time from Plaintiff to allow him to obtain funds to repay the overpayment. Debtor attempted to obtain funds from various sources, but was unsuccessful. Debtor's bankruptcy papers reflect he was in difficult financial straits in 2008 and 2009, which did not improve and resulted in his filing for bankruptcy in 2010.

Debtor did not make any representations to Plaintiff, fraudulent or otherwise, at the time the second check was issued, received, or deposited, or when the funds were spent. Debtor made no disclosure omissions regarding the overpayment. Debtor was not aware of the overpayment at the time the check was issued, received, or deposited. He did not have a duty to report the overpayment to Plaintiff because he was not aware of the mistake until Plaintiff called him in late May 2008.

Plaintiff presented no evidence establishing Debtor, at any time, made a false representation to Plaintiff with the purpose and intent to deceive Plaintiff. Debtor did not commit conversion. His failure to fulfill the Consent Judgment does not constitute fraud. The indebtedness owed by Debtor to Plaintiff for the overpayment of $46,793.77 is dischargeable and is due to be discharged.

## **CONCLUSIONS OF LAW**

*11 U.S.C. Section 523(a)(2)(A)*

The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Exceptions to discharge "should be strictly construed against the creditor and liberally in favor of the debtor." Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

Section 523(a)(2)(A) of the Bankruptcy Code provides a discharge pursuant to 11 U.S.C. Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (1) Debtor made a false representation with the purpose and intent to deceive Plaintiff; (2) Plaintiff relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). It must establish each of the elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) non-dischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of

reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Id.

The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

*Analysis*

Plaintiff failed to establish the first element of a Section 523(a)(2)(A) cause of action: Plaintiff did not establish Debtor made any false representations with the intent to deceive Plaintiff in any respect regarding the $46,793.77 overpayment.

Debtor did not cause Plaintiff to issue the overpayment; Plaintiff admitted the overpayment resulted from its own internal accounting errors. Debtor made no false representation, or any representation, regarding the receipt, deposit, or expenditure of the overpayment. He did not know the check issued to him on April 4, 2008 was an overpayment when it was received or deposited or when the funds were spent. Debtor learned of the overpayment error in late May 2008 after the check had been deposited and the funds spent.

Where there is a duty to disclose a fact which may justifiably induce another to act or refrain from action, a disclosure omission made with the intent to deceive

constitutes a false representation pursuant to 11 U.S.C. Section 523(a)(2)(A). Citibank (S.D.), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1089 (9th Cir. 1996). A debtor, pursuant to Florida State law, who, as a result of a mutual mistake by the debtor and the creditor, receives an overpayment has a duty to return the overpayment or alert the creditor when the debtor first learns of the overpayment. First State Bank of Ft. Meade v. Singletary, 124 Fla. 770, 770 (1936); Senfeld v. Bank of Nova Scotia Trust Company (Cayman) Ltd., 450 So.2d 1157, 1161 (Fla. 3d DCA 1984).

Debtor made no disclosure omissions regarding the overpayment. He was not aware of the overpayment until late May 2008 when Plaintiff called him. He was not aware of the overpayment when the check was received or deposited, or when the funds were expended. He had no duty to disclose the overpayment to Plaintiff because he was not aware of the overpayment until late May 2008.

The overpayment was the result of a mistake and Debtor had a duty to repay Plaintiff $46,793.77. Singletary, 124 Fla. At 770. Debtor could not return the actual overpayment to Plaintiff because the funds had been expended when he learned of Plaintiff's error. Debtor recognized and acknowledged his duty to repay Plaintiff the $46,793.77 verbally and in writing. He executed the Joint Petition and consented to the entry of the Consent Judgment. He attempted to repay the indebtedness, and paid Plaintiff $1,000.00, but did not have the means to pay the balance.

Debtor did not at any time refuse to repay the overpayment or intend to deprive Plaintiff of the overpayment. He did not commit conversion. Senfeld, 450 So.2d at 1161. Debtor's failure to repay Plaintiff the balance of the overpayment constitutes the basis for a civil action for recovery of an overpayment pursuant to Florida State law.

Singletary, 124 Fla. at 770. It does not constitute a basis for a Section 523(a)(2)(A) nondischargeability proceeding.

Plaintiff failed to establish Debtor, at any time, made a false representation to Plaintiff, either actively or through an omission, with the purpose and intent to deceive Plaintiff with respect to the $46,793.77 overpayment. Plaintiff, by failing to establish the first nondischargeability element of 11 U.S.C. Section 523(a)(2)(A), failed to establish the second, third, and fourth elements. The overpayment indebtedness is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a).

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the indebtedness owed to Plaintiff by Debtor arising from the overpayment of $46,793.77 in April 2008 is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A).

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 8th day of December, 2010.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge